LOTTINGER, Judge.'
This is a workmen’s compensation suit wherein the plaintiff seeks benefits for total permanent disability as the result of a back injury sustained in the course of his employment on August 22, 1956. The lower court awarded the plaintiff compensation for a period of 88 weeks at the rate of $26 per week (his admitted statutory rate) extending from August 22, 1956 through April 30, 1958, subject to a credit for payments made by defendants from August 23, 1956 through July 2, 1957. The plaintiff has appealed, seeking compensation for 400 weeks as originally prayed for.
The plaintiff was first seen by Dr. Robert Howell, general practitioner of Lake Charles, La., who examined him on the day following the accident. This doctor’s original diagnosis was that Cormier had sustained a back strain and, as X-rays reflected some calcification of the aorta (suggestive of hardening of the arteries) he referred the patient to Dr. Michael E. DeBakey, vascular surgeon of Houston, Texas. Dr. DeBakey’s findings, as disclosed by Travelers’ Exhibit No. 2, were that there was no evidence of abnormality of circulation in the lower extremities.
It appears that Cormier made some 71 office visits to Dr. Howell with the latter examining him at various times. During this period he was considered by Dr. Howell to be disabled until the final discharge which occurred on July 1, 1957. Travelers’ Exhibit No. 4. Because of the patient’s continued complaints of pain and discomfort, Dr. Howell referred him to Dr. Edmond C. Campbell, orthopedic surgeon.
Dr. Campbell’s testimony was taken by deposition. He stated that he first saw Cormier on September 11, 1956, at which time he gave him a thorough orthopedic examination. His diagnosis was that Cor-mier had suffered a lumbar strain, but he could find no evidence of a ruptured disc. Cormier was seen by this doctor at various times thereafter and on each occasion he could find no neurological changes. On December 14, 1956 there was still “mild evidence of low back disability” and, in order to pinpoint the diagnosis more definitely, a myelogram was ordered. The myelogram was performed on January 23, 1957, which was negative as to a filling defect such as is expected in a rupture of an invertebral disc. Dr. Campbell last examined the plaintiff on May 2, 1958 (4 days before the case was tried) at which time the doctor concluded that he was exaggerating his symptoms, needed no further orthopedic treatment, had recovered from his initial disability and was able to return to work.
Dr. James Gilly, orthopedic surgeon of Lafayette, Louisiana, examined the plaintiff at the latter’s request on September 25, 1957. This doctor thought the limitation of motion was voluntary and that the patient’s responses to the test for muscle spasm were unrealistic. He attributed the complaints to “a back sprain superimposed upon a shortening of the left lower extremity.” He did not think that the shortening of the extremity was related to the accident and was of the opinion that he exhibited “gross exaggeration of all of his complaints.” He found no basis to suspect a disc syndrome. Dr. Gilly suggested that Cormier wear an elevated heel and that after eight or ten weeks he should have recovered.
It appears that while plaintiff was in Houston being examined by Dr. DeBakey he was also seen by another orthopedic surgeon, Dr. B. F. Boylston. This doctor’s report, (admitted in evidence as Travelers’ Exhibit No. 3) dated May 12, 1957 reads in part as follows:
“Following the examination, because of the patient’s complaints of severe discomfort, he was given a sterile hypo which in a matter of few minutes dramatically relieved his discomfort.
“It is my feeling that this man has no objective signs to confirm his mul *741 tiple incapacitating complaints of pain and disability. Further I believe that he is greatly exaggerating these complaints. I see no evidence on obj ective examination that this man has had or now has a ruptured intervertebral disc. The hypertrophic lipping mentioned above is in my opinion of long standing and is not a result of his recent injury of 8 months ago. Accordingly I find no evidence of permanent partial disability as a result of an injury 8 months ago to his back.”
The plaintiff also went to Dr. Norman P. Morin, orthopedic surgeon of Lake Charles. This doctor examined him on January 21, 1957 and again in March, 1958. On the date of the original examination Dr. Morin was of the opinion that Cor-mier had suffered a lumbar strain and that he was at that time disabled from performing his work as a longshoreman. On the date of the last examination the doctor thought Cormier had “completely recovered from this injury and was fit to return to work.”
The only physician whose testimony was in any way favorable to plaintiff was Dr. George P. Schneider. This doctor wanted to repeat the myelogram and perform a laminectomy “if indicated.” In short, he thought the plaintiff to be disabled. We note, however, that he did not see Cormier until October 18, 1957.
Both sides agree that the question is purely a factual one. The trial judge was undoubtedly impressed by the overwhelming preponderance of medical testimony to the effect that plaintiff had recovered as of the date of trial. We think his award was eminently fair and see no reason to change it.
Finding no manifest error in the judgment appealed from, the same is affirmed.
Judgment affirmed.